UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

UNITED STATES OF AMERICA,           )
                                    )
    Plaintiff,                      )
                                    )
v.                                  )      No. 4:20 CR 137-HEA
                                    )
STEPHANIE BAKER,                    )
                                    )
    Defendant.                      )

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

### 1. PARTIES:

The parties are the defendant, Stephanie Baker, represented by defense counsel Neil Bruntrager, and the United States of America (hereinafter "United States" or "Government"), represented by Assistant United States Attorney Hal Goldsmith and the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

### 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Counts 1, 2, and 3, the United States agrees that no further federal prosecution will be brought in this District relative to the defendant's fraudulent conduct targeting her former employer, Prairie Farms Dairy Supply Company, and customer DQ Columbia,

1

*Manch HEA per record.*

during the period ~~December~~, 2018 through December, 2018, of which the Government is aware at this time.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

## 3. **ELEMENTS:**

As to Counts 1, 2, and 3, Mail Fraud, the defendant admits to knowingly violating Title 18, United States Code, Section 1341, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

1.  Defendant voluntarily and intentionally devised or participated in a scheme to defraud and to obtain money by means of material false or fraudulent pretenses or representations as detailed in the Indictment;

2.  The pretenses or representations were material, that is, they would reasonably influence a person to part with money;

3.  Defendant did so with the intent to defraud; and,

4.  In advancing, or furthering, or carrying out her scheme to defraud and to obtain money by means of false or fraudulent pretenses or representations, Defendant used or caused to be used the mail in furtherance of, or in an attempt to carry out, some essential step in the scheme.

2

## 4. FACTS:

The parties agree that the facts in this case are as follows and that the government would

prove these facts beyond a reasonable doubt if the case were to go to trial.  These facts may be

considered as relevant conduct pursuant to Section 1B1.3:

Prairie Farms Dairy Supply Company (hereinafter referred to as "Prairie Farms") sells

and distributes food and dairy products to restaurants, markets, and other retailers throughout the

Midwest region, including to fast-food type restaurants in the St. Louis, Missouri metropolitan

area.  Prairie Farms is headquartered in Edwardsville, Illinois, with major offices in St. Peters,

Missouri.

Beginning during in or about June, 2014, the defendant, **STEPHANIE BAKER,**

(hereinafter referred to as "**BAKER**"), was an employee of Prairie Farms, working in that

company's accounting department.  **BAKER's** duties and responsibilities included applying and

allocating Prairie Farms customer payments to their customer accounts.  As part of her duties,

**BAKER** would routinely receive checks from Prairie Farms customers, and make accounting

entries to apply those checks to each customer's account and therefore reduce the balance owed

to Prairie Farms of that particular customer account by the amount of the check received.

C.S. owned and operated a Dairy Queen restaurant franchise in southern Illinois,

(hereinafter referred to as "DQ Columbia").  DQ Columbia maintained an account at Prairie

Farms and purchased and received products from Prairie Farms on a regular basis.  DQ

Columbia was required under its franchise agreement to order and receive substantially all of its

food, dairy products, and supplies from Prairie Farms.

3

Beginning in or about March, 2018 and continuing through in or about December, 2018, **BAKER** devised, intended to devise, and knowingly participated in a scheme to defraud and obtain money from Prairie Farms and C.S., in an approximate amount of $192,336.74, by means of materially false and fraudulent pretenses, representations, and promises.

On one and more occasions, **BAKER**, without the knowledge and authority of Prairie Farms and its owners, received and applied payments from Prairie Farms customers other than DQ Columbia to DQ Columbia's account. DQ Columbia, therefore, received credit and a reduction it its account balance for payments that were not made by DQ Columbia, but instead were made by other Prairie Farms customers. Further, the other Prairie Farms customers who made the actual payments did not receive credit and a reduction in their own account balances. As part of her scheme, **BAKER** misapplied approximately $143,933.74 in other customer payments to the DQ Columbia account. **BAKER** withheld and did not mail out statements to the other Prairie Farms customers so that those other customers would not realize that their prior payments to Prairie Farms had not been credited to their accounts.

On one and more occasions, **BAKER** falsely represented to C.S. that, in order for DQ Columbia to continue receiving food, dairy products and supplies from Prairie Farms, C.S. needed to make cash payments personally to **BAKER**. At **BAKER's** direction, C.S. met with **BAKER** on numerous occasions and delivered cash to **BAKER** based upon **BAKER's** false representations that she would deliver the cash to Prairie Farms and credit DQ Columbia's account accordingly. In fact, **BAKER** kept the cash she received from C.S., did not credit DQ Columbia's account for the cash payments, and used the cash for her own personal use, including for the boarding and related expenses for a show horse and other general living expenses,

4

unrelated to the legitimate business of Prairie Farms. C.S. met with **BAKER** on numerous occasions and made cash payments to **BAKER** totaling approximately $48,403.00. Prairie Farms and its owners had no knowledge of the cash payments which C.S. made to **BAKER,** and received no portion of these cash payments.

On or about March 11, 2018, for the purpose of executing her scheme to defraud and to obtain money and property by means of false and fraudulent pretenses, and representations, **BAKER** knowingly took and received a check from Prairie Farms customer HPI, LLC in the amount of $2,629.93 which was sent through the United States Postal Service to Prairie Farms in St. Peters, Missouri, and misapplied that total payment as a credit to the account of DQ Columbia.

On or about June 11 and 22, 2018, for the purpose of executing her scheme to defraud and to obtain money and property by means of false and fraudulent pretenses, and representations, **BAKER** knowingly took and received checks from Prairie Farms customer HR, Inc. in the amount of $7,000 and $5,500 which were sent through the United States Postal Service to Prairie Farms in St. Peters, Missouri, and misapplied $3,577.75 of the $7,000 check and all of the $5,500 check as credits to the account of DQ Columbia.

## 5. STATUTORY PENALTIES:

The defendant fully understands that the maximum possible penalty provided by law for each of the crimes to which the defendant is pleading guilty is imprisonment of not more than Twenty (20) years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than Three (3) years.

## 6. U.S. SENTENCING GUIDELINES:  2018 MANUAL:

The defendant understands that these offenses are affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

a.  **Chapter 2 Offense Conduct:**

**(1) Base Offense Level:** The parties agree that the base offense level is Seven (7), as found in Section 2B1.1(a)(1).

**(2) Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply:

i.  Ten (10) levels are added pursuant to Section 2B1.1(b)(1)(F), as the loss was more than $150,000, but less than $250,000.

b.  **Chapter 3 Adjustments:**

**(1)** Two (2) levels are added pursuant to Section 3B1.3, because the defendant abused a position of private trust.

**(2) Acceptance of Responsibility:** The parties agree that Three (3) levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty.  The parties agree that the defendant's eligibility for this deduction is based upon information presently known.  If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said

6

evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

      iii.    **Other Adjustments:**  The parties agree that the following additional adjustments apply: None.

      iv.    **Other Adjustments/Disputed Adjustments:** None.

  c.    **Estimated Total Offense Level:** The parties estimate that the Total Offense Level is Sixteen (16).

  d.    **Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

  e.    **Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

## 7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:

**a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1)  Non-Sentencing Issues:**  The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

**(2)  Sentencing Issues:**  In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

**b.  Habeas Corpus:**  The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c.  Right to Records:**  The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

8

## 8. OTHER:

**a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

**b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

**c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished

**d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $300, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

9

e.  **Possibility of Detention:**   The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

f.  **Fines, Restitution and Costs of Incarceration and Supervision:**   The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision.  The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately.  Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c).  Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss.  The defendant agrees to provide full restitution to all victims of all charges in the indictment.

g.  **Forfeiture:**  The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities.  The defendant agrees the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence.  The defendant agrees not to object to any administrative, civil or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the government and/or to rebut the claims of nominees and/or alleged third party owners.  The defendant knowingly and intelligently waives all constitutional and statutory challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.  The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials

10

during the course of their investigation, whether or not they are subject to forfeiture, and agrees

not to contest the vesting of title of such items in the United States.  The defendant agrees that

said items may be disposed of by law enforcement officials in any manner.

9. **ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:**

In pleading guilty, the defendant acknowledges, fully understands and hereby waives her

rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried

by a jury in a public and speedy trial; the right to file pretrial motions, including motions to

suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to

require the government to prove the elements of the offenses against the defendant beyond a

reasonable doubt; the right not to testify; the right not to present any evidence; the right to be

protected from compelled self-incrimination; the right at trial to confront and cross-examine

adverse witnesses; the right to testify and present evidence and the right to compel the attendance

of witnesses.  The defendant further understands that by this guilty plea, the defendant expressly

waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by

counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the

proceeding.  The defendant's counsel has explained these rights and the consequences of the waiver

of these rights.  The defendant fully understands that, as a result of the guilty plea, no trial will, in

fact, occur and that the only action remaining to be taken in this case is the imposition of the

sentence.

The defendant is fully satisfied with the representation received from defense counsel.  The

defendant has reviewed the government's evidence and discussed the government's case and all

11

possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful

12

information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement.  The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

October 1, 2020
Date

HAL GOLDSMITH
Assistant United States Attorney

13

Oct. 1, 2020

Date

STEPHANIE BAKER

Defendant

Oct. 2020

Date

NEIL BRUNTRAGER

Attorney for Defendant

14